UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO. 7:09-cv-00053-KKC

RONNIE CRUM                                                                                                          PLAINTIFF

v.                  **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security                                                                        DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

      This matter is before the Court on cross motions for summary judgment filed by Plaintiff Ronnie Crum ("Plaintiff") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). [R. 10, 11]. Plaintiff asserts that the decision of the Commissioner denying benefits is not supported by substantial evidence in the record because he failed to give controlling weight to the opinion of his treating physician. For the reasons set forth below, the Court grants the Commissioner's Motion for Summary Judgment.

I.        FACTUAL AND PROCEDURAL BACKGROUND.

**A. Factual Background**

      Plaintiff was forty-eight years old when the final decision was issued in November of 2008. AR 338. He has a tenth grade education and is able to read. AR 341-42. His past relevant work experience is as a school custodian. AR 342-43. Plaintiff worked as a custodian for almost twenty years. AR 202-03. However, he alleges that he became disabled in June of 2001 after accidentally shooting himself in the right knee with a nail gun. AR 106, 116, 203,

216, 343-45. He had knee surgery on the day of his injury and was discharged from the hospital the following day. AR 205.

**B. Procedural Background**

Plaintiff filed an application for disability insurance benefits on July 26, 2002. AR 106-108. The claim was denied initially and upon reconsideration. AR 83-89, 90-93. Plaintiff then filed a request for a hearing. AR 93. Following the hearing, the Administrative Law Judge ("the ALJ") issued an on-the-record favorable decision on July 26, 2003. AR 31-41. On December 6, 2003, the Appeals Council reversed the ALJ's decision and remanded the claim to the ALJ for further proceedings. AR 45-48.

On remand, a different ALJ issued an unfavorable decision on March 25, 2005. AR 12-21. Plaintiff again filed a request for review by the Appeals Council which was denied on May 16, 2005. AR 6-8, 9-11. Plaintiff then filed a complaint in the United States District Court for the Eastern District of Kentucky on June 27, 2005. On May 25, 2006, the Court entered an order remanding Plaintiff's claim for further consideration with instructions that Plaintiff's treating orthopedic surgeon's opinion be reconsidered in light of *Wilson v. Comm'r of Soc. Sec.*, and Social Security Ruling 96-2p. Upon remand, the ALJ held an initial hearing on November 2, 2007 and a supplemental hearing on September 4, 2008. AR 335-56, 357-66. He then issued another unfavorable decision on November 26, 2008 denying Plaintiff's application for benefits. AR 231-42.

The Appeals Council again denied Plaintiff's request for review on February 25, 2009. AR 225. As a result, the ALJ's decision became the final decision of the Commissioner and is now ripe for judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act.

## II.   DISCUSSION

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).

This Court must defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The Court may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

### B. Overview of the Process

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment

3

of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the existence and severity of limitations caused by his impairment and that he is precluded from doing past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id.*

At the first step, the claimant must show he is not currently engaging in substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that he suffers from a severe impairment or a combination of impairments that are severe. *See* 20 C.F.R. § 404.1520(c). At the third step, a claimant must establish that his impairment or combination of impairments meets or medically equals a listed impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any existing mental or physical impairments. In determining the RFC, the ALJ must consider all of the claimants impairments, including those which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Once the ALJ has determined the RFC, he must determine whether the claimant has the RFC to perform the requirements of his past relevant work. *See* 20 C.F.R. § 404.1520(f).

At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient work in the national economy that the claimant can perform given his RFC, age, education and

work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c).

**C. The ALJ's Decision**

At step one of the sequential evaluation process, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of June 26, 2001. AR 235. At step two, the ALJ found that Plaintiff has the following severe impairments: (1) history of traumatic injury to right knee; (2) degenerative joint disease of the back; and (3) history of myocardial infarction. AR 235. In discussing Plaintiff's history of right knee injury, the ALJ discussed his surgery following the nail gun accident and his continued complaints of pain and swelling through treatment in February 2002. AR 235-36. While the ALJ found no subsequent evidence of effusion, atrophy, warmth/redness or laxity, he nonetheless found this impairment severe because of Plaintiff's antalgic gait, crepitus of the right knee and decreased strength due to pain. AR 236.

With regard to Plaintiff's back pain, the ALJ found this impairment severe because an x-ray of the lumbar spine showed mild degenerative joint disease and because Plaintiff had tenderness and back spasms on examination. AR 236. Finally, the ALJ found Plaintiff's heart condition severe although Plaintiff was noted as doing well following stent placement and had a normal nuclear stress test with 56% ejection fraction. AR 236.

At step three, the ALJ determined that Plaintiff's impairments whether considered individually or in combination did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 236. Prior to step four, the ALJ determined that Plaintiff had the RFC to:

> lift/carr[sic] 20 lbs. occasionally, 10 lbs. frequently; only occasionally push/pull with right lower extremity, and only to the above weights; stand/walk 2 hours out of an 8 hour workday, 20 minutes at a time; only occasionally climb, balance, stoop, crouch, kneel, and crawl; not to squat or climb ladders, ropes, or scaffolds; avoid work at unprotected heights, around dangerous, moving machinery, or on slanted or uneven surfaces; and avoid work in extreme temperatures or high humidity.

*Id.* At step four, the ALJ found that Plaintiff was unable to perform his part relevant work as a school janitor because this job was considered to be medium to heavy unskilled work. AR 240. A vocational expert ("VE") testified that Plaintiff could not perform this work based on the ALJ's RFC determination. *Id.* At step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ found that there were jobs that exist in significant numbers in the national economy that he can perform. AR 241. Based on the above findings, the ALJ held that Plaintiff had not been disabled as defined by the Social Security Act from June 26, 2001 through the date of the decision. AR 242.

**D. Analysis**

Plaintiff's only argument in support of summary judgment is that the ALJ erred in not relying on Dr. Nichols' opinion and denying benefits. Dr. Nichols was Plaintiff's treating orthopedic surgeon and performed Plaintiff's knee surgery on June 25, 2001 after he accidentally shot himself with a nail gun. AR 170. By July 3, 2001 Dr. Nichols noted that Plaintiff's "wounds are healing nicely. There are no signs of infection. His sutures are removed. We are starting physical therapy." AR 169. On July 12, 2001 Dr. Nichols noted that Plaintiff was doing fairly well, almost able to come into full extension, flexion was 95 degree and "[h]is wounds have healed nicely. There are no signs of infection. He has 2+ effusion. He is going to work on motion himself." AR 168.

Plaintiff returned on July 18, 2001 and asked Dr. Nichols what his limitations would be chronically because he was thinking of taking early retirement. AR 167. Dr. Nichols notes from that date show his opinion that:

> [b]ased on the injury to his right knee, I would predicate that it would be very difficult for this patient to maintain any occupation that would require him to stand for long periods or to walk. He will most likely be restricted to sedentary type desk jobs in the future. He probably will develop significant arthritis in his knee over the next several years. He is going to return in 3 weeks to monitor his progress, as far as motion is concerned. If he is unsuccessful at gaining all his motion, we will plan on starting physical therapy at that time.

*Id.*

By September 17, 2001, although Plaintiff continued to have pain and walked with a severely antalgic gait, on examination he had full range of motion, effusion was down to 1+ and "his x-ray was basically normal." AR 164. During the same visit, Dr. Nichols "again discussed a Mosaic-plasty as a possible alternative treatment option in the future." *Id.* Plaintiff did not return to Dr. Nichols until February 21, 2002 when he claimed to be suffering from "a lot of pain and swelling in his knee." AR 163. Dr. Nichols reiterated that Plaintiff was trying to get his retirement, and stated that he had not been taking any anti-inflamatories. *Id.* Dr. Nichols gave him samples of Celebrex to try and Lortab for his pain. *Id.*

In support of Plaintiff's argument that the ALJ erred by giving little consideration to Dr. Nichols' opinion, Plaintiff asserts that Nichols' opinion should be controlling because he performed the surgery on Plaintiff's knee and "was the physician in the best position to see the extent of damage" and "to give an opinion concerning the limitations that would result."

Social Security Regulations provide a framework for evaluating the opinions of treating physicians. Under these regulations:

7

> [i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). The factors considered include: the length, frequency, nature, and extent of the treatment relationship; the evidence supporting the opinion; the consistency of the opinion with the record as a whole; the specialization of the doctor; and other relevant factors. *Id.* at (d)(2)-(d)(6); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). As a result, while treating source opinions are not necessarily binding, the ALJ must set forth some basis for a decision rejecting such an opinion. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

The Social Security Regulations "require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(quoting 20 C.F.R. § 404.1527(d)(2)). The "good reasons" must be supported by evidence in the record and "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 406 (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188 at *5).

Upon considering Dr. Nichols' opinion, the ALJ afforded it little weight. The Court finds that the ALJ's decision rejecting Dr. Nichols' opinion is supported by substantial evidence in the record and that he gave sufficiently "good reasons" for doing so.

First, the ALJ's opinion clearly recognizes that at the time Dr. Nichols rendered the opinion that Plaintiff relies upon, he had only been treating Plaintiff for less than one month after the injury. At this time, he did not have a long term treatment relationship with Plaintiff and his notes appear to show that he based this opinion on what he expected was likely to occur in the aftermath of Plaintiff's injury. This opinion was not based on objective medical findings. In fact, many of Dr. Nichols own objective medical findings including x-rays taken of Plaintiff's knee showed that it was essentially normal. In addition, subsequent treatment records from Dr. Nichols indicated that Plaintiff was doing much better. Dr. Nichols noted that effusion was down and Plaintiff had full range of motion. He also never indicated that Plaintiff would be unable to perform any work. Rather, he made a similar finding to the one that the ALJ ultimately made - Plaintiff's injury would likely render him unable to return to his past relevant work as a custodian.

The ALJ's opinion also indicates that he did not necessarily disagree with Dr. Nichols' predication made shortly after Plaintiff's surgery. He simply determined that the opinion was inconsistent with subsequently obtained medical evidence in the record and that ultimately little medical evidence supported the opinion. Thus while the ALJ found the predication to be a reasonable one, he simply found that it had not come to fruition. The ALJ clearly articulated that his finding on this point was informed by various consultative examinations contained in the record.

For example, Dr. Rita D. Ratliff conducted an orthopedic exam of Plaintiff in April 2002. AR 68. Dr. Ratliff observed that Plaintiff had an antalgic gait but did not use an assistive device. AR 69. Dr. Ratliff's examination failed to reveal any "tenderness, redness or warmth," although

range of motion in the right knee was decreased to 120 degrees and limited by pain. AR 70. Upon reviewing a right knee x-ray, Dr. Ratliff remarked that:

> Patient is status post injury to right knee and has had surgery but continues to have significant pain, decreased range of motion and difficulty ambulating. He would most likely have difficulty returning to his previous employment because of the increased requirement for prolonged standing and bending at the knees. *He would be capable of employment that does not require prolonged standing, walking, moving about.*

*Id.* (emphasis added). Dr. Ratliff also observed heavy callouses on both of his hands which she claimed suggested that "he has been doing some type of labor." *Id.*

The ALJ also considered an orthopedic examination by Dr. Bobby J. Kidd on June 9, 2004. AR 59. Dr. Kidd noted that Plaintiff ambulated with a limp favoring the right knee. AR 60. However, his gait was "not unsteady, lurching or unpredictable." *Id.* In addition, upon examining the right knee, Dr. Kidd noted that there was "crepitus without redness, warmth, swelling, fluid or laxity." AR 61. Extension was "normal to 0 degrees and flexion is normal to 150 degrees." *Id.* Evidence from Dr. Askin similarly demonstrated that Plaintiff was not as severely limited as Dr. Nichols had anticipated shortly after the injury occurred. Dr. Askin noted that while Dr. Nichols' July 2001 prognosis "anticipated...that severe arthritis would result,...that is not reflected on the recent xray or lack of swelling noted in the late clinical exams." AR 76. Finally, the ALJ considered the later reports from Drs. Stauffer and Ghazi which provided additional support for his assessment that Dr. Nichols' opinion was entitled to little weight.[1]

---

[1] Plaintiff also asserts that the ALJ erred in securing additional consultative examinations after this Court's remand order. He submits that in doing so, the ALJ went beyond the scope of this Court's remand order directing that Dr. Nichols' opinion be considered in light of *Wilson* and Social Security Ruling 96-2p. Plaintiff has not directed the Court's attention to any case law supporting a determination by this Court that the ALJ acted improperly. In addition, even if the Court were to accept Plaintiff's arguments that these opinions should not have been considered, it would still find that the ALJ's decision giving little weight to Dr. Nichols' opinion is supported by substantial evidence in the record.

Considering all of the evidence in the record, and the applicable factors set forth in the Social Security Regulations, the Court finds that the ALJ's decision giving little weight to Dr. Nichols' opinion is supported by substantial evidence in the record and that the ALJ articulated "good reasons" for rejecting it.

### III. CONCLUSION

The Court has considered the parties' respective arguments and has determined that the ALJ's decision giving little weight to Dr. Nichols' opinion is supported by substantial evidence in the record and that the ALJ gave sufficient "good reasons" in support of his decision. Accordingly, it is hereby ORDERED as follows:

(1) Plaintiff's motion for summary judgment [R. 10] is **DENIED;**

(2) The Commissioner's motion for summary judgment [R. 11] is **GRANTED;** and

(3) **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

Dated this the 9th day of March, 2010.

Signed By:

*Karen K. Caldwell* KKC

United States District Judge